Q’BRIEN, J.
—It will be found that many of the interesting legal questions here presented have been already satisfactorily disposed of. The .learned judge, in his opinion overruling the demurrer to the eomplaintin this action says:
“A widow entitled to dower, who joins with the heirs in a lease <of the real estate for a term of years, becomes vested, as against the tenant,with all the rights of a lessor, and her title to the premises and to the rents cannot he disputed by him. Her right of dower gives her an interest in the land whicjj is capable of being sold, transferred, and mortgaged, Mutual Life Insurance Co. v. Shipman, 119 N. Y. 324; 29 St. Rep. 742; Pope v. Mead, 99 N.Y. 201; Payne v. Becker, 87 N. Y. 153 ; and there is no reason why she may not join with the heirs or owners of the fee in a lease of the land * "" In making a lease, she consents to the undisturbed possession by the tenant for the whole term, and must look to the rent for the satisfaction of her right to the rents and profits of the land for that period. The tenant who has received the benefit of her participation in the lease cannot avoid payment of her proportion of the rent reserved. In view of the rights secured to the widow by the execution of the lease, as against the lessee, and also as against the heirs who joined with her as lessors, it is unnecessary to discuss the objections toan action against a grantee or lessee of the heirs by a widow with dower unassigned, or to consider the absence from, this complaint of allegations material to such a cause of action, or to discuss the inability of a widow to execute a lease without the heirs. Hone of the objections which readily present themselves in any such supposed case have any application to an action like the present, founded upon a lease, the validity of which cannot he questioned, and which is brought to enforce the liability of the tenant, who having secured by such lease a fixed term for a fixed rental, seeks to escape his obligations thereunder. It appears that, after the execution of the lease, the other lessors, who were the heirs at law, conveyed from time to time their respective interests to the tenant, leaving the widow the sole remaining lessor. This does not affect her right, for, as she still remained bound by her lease, the tenant still remains bound by his covenant to pay rent, modified or qualified only by her *446 right to a proportionate part thereof; and for such proportionate part as she was entitled to, her administrator has a good cause of action. The fact that the plaintiff’s colessors conveyed their whole interest to the defendant before the commencement of the action made is unnecessary to join them either as plaintiffs or defendants; the plaintiff now being the only party in interest.”
This is a correct statement of the law, and clearly outlines the nature of the action, which is one on a lease, to obtain by one les ser the proportionate part of the rent to which she was entitled. The action is therefore to be treated "as one to apportion rents as between joint tenants, or as between tenants in common with unequal interests, or as between the owners of the fee and the holder of an estate for life.
The suggestion that the other lessors must be made parties is disposed of by what appears, viz. that the other parties have transferred their interests to the defendant leaving but two who could have any interest in the property,—the plaintiff and the defendant. The further suggestion that the plaintiff cannot sue upon the lease because her intestate could not make a lease granting an estate for a term, but could only release her dower interest, is equally without merit; for, if it be conceded that a dowress out of possession cannot lease, it has been frequently held that she may release, or, for an annual payment, agree not to enforce her action for dower. No such action to obtain an assignment of dower was instituted during the existence of the lease, nor would it have been maintainable, for by joining in the lease she estopped herself from taking such action. What the exact agreement was between the plaintiff’s intestate and the heirs is not shown, beyond the fact that, out of the rents, there was remitted to her the sum of $62.50 a month. What this agreement was, however, we do not regard as material, it not being claimed it inured to the benefit of the defendant. At the time the lease was made, and prior to the conveyance by the heirs, the defendant was obliged to pay only the amount of rent reserved in the lease; and the manner of its division among the lessors was a subject of no interest to it, nor is it in any way here involved, because it is conceded that all the rent was paid up to the time that the defendant acquired the title in fee to the property, subject to the dower interest, which, as-we have seen, the dowresswas not in aposition to enforceduring the term of the lease, and, as correctly said in the opinion from which we have quoted, “she must look to the rent for the satisfaction of her rights to the rent's and profits of the land for that period.”
It is claimed, however, that by the conveyance to the defendant, by all those who held the'fee, and who are four of the five joint lessors or lessors in common, such deed per se and by operation of law revoked or merged the lease. We cannot assent to this view, because, whatever may be the right of one or more joint owners or tenants in common to sell, assign, or release by agreement, there could not be as against the fifth, in the absence of any such agreement, a merger by operation of law; and not *447 only was there no such agreement, but just the contrary appears, the deeds being li subject to right of dower.”
Conceding, then, the right of the widow, after the conveyances to the defendant, to maintain an action for her share of the rents reserved by the lease, and her right to have the same apportioned by showing just what her interest was, we are brought to a consideration of the questions of fact upon which we think this appeal must be disposed 'of. The conrt below found that, at the time the lease was executed, the power of attorney, under authority of which the name of Diadema Sommer was signed to it, had been revoked, and that as to her the lease was inoperative; that it did not appear she ever saw the lease or knew its terms, or that she accepted the payments from the defendant as rent, and hence-the proof of ratification by her was insufficient; and that, assuming the defendant was estopped from disputing tenancy, as between her and defendant the lease was canceled and annulled by as. parol engagement on the part of defendant to pay for her maintenance for the rest of her life, which promise was performed.
In regard to the first of these findings, that at the time the-lease was executed, the power of attorney given to Burr had been revoked, we think the court fell into error, because the evidence clearly shows that the revocation was subsequent to the execution of the lease by the attorney, and that, in addition to the written power, the attorney was orally authorized to execute it. As to the other finding, that the lease was canceled and annulled by a parol engagement on the part of the defendant to pay for her maintenance for the rest of her life, which promise was performed, there is evidence to sustain it It is stoutly denied by all the parties with whom it is claimed that this agreement was made. So far as any agreement with Burr is concerned, the defendant can receive no benefit therefrom, because, the evidence being that his power was revoked, he was without authority to make it. But it does not appear that the power of attorney subsequently given to Sebastian Sommer, and never revoked, was in its terms broad enough to authorize him to enter into such an agreement on behalf of his mother, and that he did not enter into a parol agreement by which on her behalf, he accepted a certain sum monthly during her life in lieu of any claim under the lease or for dower, two witnesses positively assert. Besides this testimony, we have the fact that thereafter the defendant continued to pay the amount which the witnesses state was the sum agreed upon for a cancellation of the lease or a substitution of a new agreement therefor in favor of the' dowress, and which was the sum that before the conveyance to defendant had been paid to her. It will thus be seen that the crucial question is, was there any revocation of the lease, or any modification of its terms, or substitution of anew agreement therefor? Or. stated differently, as the lease made no mention of dower, and did not specify what proportion of rents Diadema Sommer was to receive, and as the defendant afterwards acquired the fee from the heirs, subject ■ to the dower "of the widow, was there any agreement by which -the amount she was to receive, whether as rent or as dower, was *448 fixed and agreed upon ? That there was such an agreement between her and the heirs the evidence would seemingly indicate, •and that payments of the same amonnt were continued down to her death is conceded. And when we remember that she continued ■to receive these without objection, and that her attorney in fact, who was her son, and Burr, who was her son-in-law, and those who now appear to support her claim by their testimony, stood by until after her death, we cannot conclude that the trial judge exceeded his province in creating the witnesses for the defendant, * and holding that such an agreement was made. In his decision, ^ he meets the contention that such an agreement “ is nugatory, because a promise to pay a less sum is no discharge of an obligation^ for a greater sum,” by saying: “The engagement to support Dia■demá Sommer for life was quite different from the stipulation to pay her rent for a definite term; and, though the promise of maintenance was by parol, still, being performed, it is a good ■accord and satisfaction.” As this finding that an agreement was made for a cancellation of the lease, or a substitution of a new •agreement in lieu thereof, is not against the weight of evidence, we do not think we should be justified in interfering with the conclusion reached by the trial judge.
The judgment should therefore be affirmed, with costs.
VAN BURNT, P. J., and PATTERSON and RUMSEY,-JJ., concur.
INGRAHAM, J.
—I am unable to agree with" Mr. Justice O’BRIEN as to the effect of the conversation testified to by two of the officers of the defendant in relation to the cancellation of the lease sued on. I cannot agree that we have arrived at a position at which a vested interest in real property can be conveyed by ■a mere conversation, and especially when that conversation is with an agent whose only authority in respect to the property is to sign, seal, execute,=and deliver deeds and conveyances for the leasing or the absolute sale. or. disposal of the property. I am inclined to the opinion that the proof of any agreement is so indefinite, and is ■contradicted by the deeds of conveyance by which the property was conveyed to the defendant, snob deeds purporting to convey only the individual interests of the grantors, subject to the plaintiff’s intestate’s right of dower, and the testimony of each of the others who are said to be the parties to the alleged agreement, as to he so clearly against the weight of evidence that the finding should be reversed. But, assuming that there was some such Agreement between these owners of the fee and the defendant or its representative as the time of the conveyance as was testified to by defendant’s witnesses, I do not think that such an agreement. is binding upon the plaintiff’s intestate or that it was sufficient to either annul the lease which -was under seal, and under which the defendant held the property,- or to operate as an extinguishment or transfer of the plaintiff’s intestate’s right •of dower in the property.
The situation of the parties to tliis transaction at the time this alleged agreement was said to have been made was as fol *449 lows: The four owners of the fee of this property and the plaintiff’s intestate who had an unadmeasured right of dower in the property had joined in a lease by which they, as lessors, leased t.o the defendant, as lessees, the premises in question. Nothing was said in that lease as to the respective interests of the lessors in the property, or as to the proportion in which the rent was to have been divided; and it is clear that under that lease the defendant was estopped from denying the lessors’ title to the premises, and that the payment by the lessees of the rent to any of the lessors would be a discharge of the obligation to pay the rent. In any suit brought by the lessors to recover the rent, all the lessors would be, necessarily, parties plaintiff; and, on the face of the instrument itself, each of the lessors might be entitled to an undivided one-fifth of the rent. As between the lessors themselves, however, a different principle would prevail. Each party would be entitled to the proportion of the rent that such party’s interest in the property itself justified. The parties owning the property, by joining with the plaintiff’s intestate in the lease, recognized her interest in the property; and in equity, I think, it •could be considered as a setting apart to her the portion of the income to which she was entitled under her right of dower in the premises. As between the lessors themselves, it seems tome she would be clearly entitled to a third of the rents reserved after the payment of the taxes and other charges upon the property.
It is quite clear from the evidence that the defendant understood the interest of the plaintiff’s intestate in the property. The treasurer of the defendant testified that in January, 1889, Mr. Holm•quist, the husband of one of the owners of the fee, and who had been appointed the agent of the lessors to collect the rent, told the treasurer that there was rent or board due for the plaintiff’s intestate, who was at some home or boarding house in Pennsylvania, and the defendant was requested to pay such board on account of the rent. From that time on he paid, on account of the rent, plaintiff’s intestate’s board to the person in Pennsylvania with whom she was boarding, the amount being from $62.50 to $100 a ■month. Subsequent to this time, and in June of the same year, the defendant acquired the title, of the four lessors who were the ownei's of the fee, to the property ; but in all conveyances of the property to the defendant they were made subject to the right of -dower of the plaintiff’s intestate. These conveyances on their face reserved to the plaintiff’s intestate her interest in the property, the ■conveyances being made subject to it, and such interest was expressly stated to be a right of dower in and to the premises conveyed._ They had therefore full notice of the plaintiff’s intestate’s rights in the premises, and took the conveyances subject to those rights. They then occupied a double position to the plaintiff’s intestate. They were her tenants, holding under a lease from her, which prevented them from disputing her interest in the property, with full knowledge of what her interest was, and acquired the fee ■of the property expressly subject to that interest That interest, *450 as between the lessors, was a right to a third of the rents of the property during her life.
There is not a particle of evidence that there was any agreement that the plaintiff’s intestate’s right to the amount that she was to-be entitled to receive was anything less than the law gave her in the property, namely, one-third of the rents and profits during her life; and, upon acquiring the conveyance of the property from the owners of the fee, they acquired just such right as the owners of the fee had, namely, a title to the property subject to the plaintiff’s intestate’s right of dower, which, by the execution of the lease by plaintiff’s intestate with the owners of the fee, was a clear recognition of her right, and, as before stated, gave her a right to one-third of the rents during her life. No agreement that the owners of the fee could make could affect the rights of the plaintiff’s intestate, and the only agreement that is testified to was an agreement by the owners of the fee with the defendant. There is not the slightest-evidence that either of the owners of the fee had any power to make su.ch an agreement. The only authority that plaintiff’s intestate had given to any of them was the power of attorney by which she appointed her son Sebastian Sommer as her attorney, to sign, seal, execute, and deliver such deeds and conveyances-for the leasing of the absolute sale and disposal of the premises in question; and no such deed was executed by the attorney. What the defendant did after this execution was to continue the payments that they had before made to the person with whom plaint iff’s intestate was living, for her board ; and there is no evidence to show that plaintiff’s intestate ever had any knowledge" of the source from which these payments came. They had, before the execution of this conveyance, been made on account of the rent reserved by the lease; and, after the conveyance, there was nothing to show that they were made on any other account, or in any other way, so far as this plaintiff’s intestate was concerned. The amount due to the plaintiff’s intestate was largely in excess of any payments made by the defendant, and there is nothing to show that she had any knowledge of the alleged agreement upon which the defendant relied. No estoppel, therefore, can arise which would prevent the plaintiff’s intestate from claiming at any time the balance due her under the lease; nor can this verbal agreement be upheld as against the plaintiff’s intestate on the ground that it was an executed contract, which a court of equity would enforce; and she had no knowledge of the existence of such a contract, and had received nothing on account of it, knowing that it had been made. She had a right to assume, if her attention was called to it, and that the payments were made in accordance with the original request to the defendant to make the payments on account of the rent.
The right of a person entitled to dower in premises to dispose, of her interest in - the premises before the dower has been ad-measured is fully recognized in this state by the authorities.
In the case of Tompkins v. Fonda, 4 Paige, 448, the chancello;, said:
*451 “But, in equity, if the widow is in possession or is entitled to assignment o£ dower immediately, the want of a mere formal assignment of dower is not considered material. And if she has received the income of the whole premises, either as guardian of the heir at law or otherwise, she will, upon the taking of an account thereof, be entitled to retain her third, although her dower has not been assigned.”
And in Payne v. Becker, 87 N. Y. 153, the court say;
“And it must now be deemed settled that, upon the death of her husband, a widow has an absolute right to dower in the lands of which he had been seised; and that this right of interest, although resting in action, is liable in equity for her debts.”
In the case of Pope v. Mead, 99 N. Y. 201, it was held that where a dowress joined in a conveyance of the property, taking back to herself a mortgage, the mortgage secured to her the purchase money; that, upon a foreclosure of that mortgage, she was entitled to the value of her dower, as secured by the mortgage; and that that right was superior to that of the owners of the fee,' subject to the dower, although dower had not been admeasured or set apart to her.
Applying the principle established in these cases, it must be held that the plaintiff’s intestate was in possession of the premises upon the execution of the lease by her to defendant, and the execution of that lease, reserving the rent to her, put her in the same position as if dower in the premises had been assigned to her. She was thus entitled to an undivided one-third of the rents of .the property reserved by the lease, and that interest was superior to the right of the owners of the fee, and was superior to the right that the defendant acquired by the purchase of the property from the owners of the fee.
I think, therefore, that the judgment should be modified by directing an accounting before a referee as to the amount düe for rent under the lease subsequent to the conveyance of the fee to the defendant, and to the time of the plaintiff’s intestate’s death, and directing judgment for one-third of the net amount of the rents of the property, after deducting all payments made by the defendant for taxes or to her charges upon the property, with costs to the appellant.